### 36343.  WOOD *v.* THE STATE.

DECIDED NOVEMBER 9, 1956.

*A. Russell Ross, Edwin W. Ross, Lovejoy Boyer,* for plaintiff in error.
*J. Wade Johnson, Solicitor-General,* contra.

GARDNER, P. J.   Richard Wood was indicted for murder and convicted of voluntary manslaughter.   The indictment alleged murder by shooting the victim.   The defendant was allowed bail but bail was revoked later and the defendant is now in jail.

The defendant's motion for new trial, on the general grounds only, was denied and the case is here for review.

The evidence shows substantially that the defendant left the premises where the deceased lived, was gone approximately fifteen minutes or more; that he returned and the shooting occurred. The officer testified that the defendant and the victim were drinking.   He testified as to what was found at the scene of the killing.

Mrs. Alfred Ballard, widow of the deceased, testified that she and her husband had lived in a trailer furnished by the employer of the deceased; that there were two other trailers near, one in which the employer lived, and another in which one Quincy Buchanan lived; that the night of the shooting the defendant

came to the trailer of the deceased, where several people were present, drinking. The defendant drank some of the alcoholic beverages, along with the others in the trailer; that so far as the witness knew there was no ill feeling between the deceased and the defendant; that there was some discussion with the guests about donating some money to take care of a hospital bill for the wife and baby of the defendant. The witness testified that two of the deceased's sisters from Rockmart, Georgia, were in the trailer that night; that the defendant had an argument, whereupon the two sisters decided to leave. However, just before they left, the defendant had left the trailer. When the sisters got in their car and started the motor, the deceased ran out and asked them not to go. The witness testified that when the deceased ran out she heard the deceased say: "Don't shoot me"; that she didn't know who the deceased was talking to inasmuch as it was dark outside; that immediately after the words were spoken, the witness heard a gun fire; that the deceased started back towards the witness and said: "Baby, he shot me", and "Baby, I love you"; that the deceased fell in her arms and then to the ground; that someone (she stated that it was Richard Wood) told the witness to get back inside the trailer; that at that time she didn't know her husband was dead. The witness stated: "The man that told me to get back in that trailer is the same man that shot my husband because I knew his voice. My husband was not doing anything to Richard Wood to make Richard shoot him, and my husband did not have a knife, shotgun, baseball bat, or anything else in his hand to defend himself with." The witness testified that the defendant had sufficient time after he left their trailer to go to his home, secure a gun and come back and shoot the deceased; that no one threatened the defendant; that nobody had a drink until the defendant arrived; that she was delayed in notifying the police of the killing because, after the defendant told her to get back in the trailer, she got back in and it was some time before she came back out to call for help.

Mrs. James Hobbs, a witness for the State, testified that she was standing on the back porch of her home, and heard the gun fired and saw the deceased running; that although it was night there was a light shining outside the trailer and she could see sufficiently to have seen the man running; that she did not know anybody got killed.

Mrs. E. T. Sills testified that she lived near the deceased and his wife and that the wife came in and said to the witness that "he has killed my husband"; that the wife asked the witness to call the police department, which was done. She testified that she did not believe the wife of the deceased was drunk, that she was just hysterical because her husband had been shot. (We might state here that the trial judge ruled out the evidence as to what the wife of the deceased said to witness.)

Virginia Ballard, sister of the deceased, testified that they were visiting the trailer on the night of the shooting; that the defendant came into the trailer and asked to use the telephone, and that after he used the telephone, he remained for a drink; that there was no drinking until the defendant arrived; that Richard Wood, who came to the trailer that night, was the defendant who was sitting in court; that she and her sister were ready to retire but that the defendant would not leave; that her brother, the deceased, so told the defendant but the defendant continued to remain. The deceased said to the defendant; "Well, if they can't get you out, I can." The defendant said: "Well, I will leave after I have another drink with your wife." The deceased then said: "No, hell no, you won't." The witness testified that her brother had been lying down but that he then jumped up and "swung" at Richard Wood because he wouldn't leave the trailer; that the defendant ran and that that was the last that the witness saw of the defendant; that when the deceased swung at the defendant he hit the sister of the witness; that she and her sister then decided to leave the trailer and go back to their home at Rockmart. She testified that Richard Wood, the defendant, was the one who caused the disturbance; that after she and her sister left, they got to the city limits of Hawkinsville, ran out of gas, turned around and came back to a service station in Hawkinsville to get some gas; that they then proceeded and were stopped by State Troopers at Perry, Georgia, where they were told that there had been an accident in Hawkinsville and were ordered to return to Hawkinsville. She testified: "Alfred Ballard did not do or say anything on earth while I was down there in that trailer to cause this man, Richard Wood, to kill him. He did not do or say a thing on earth to cause it."

Mrs. Geraldine Moates, another sister of the deceased, testified

substantially to the same effect as did Virginia Ballard, her sister. She also testified that her sister and sister-in-law had an argument regarding washing the dishes. She testified that the defendant did not comply with three requests for him to leave. She testified that Mr. Hunt, the employer of the deceased, called to her in a tone she did not like and that she informed him that she was married, and he did not pursue the conversation. She testified: "No one in that trailer said anything or did anything to Richard Wood to cause him to kill or shoot Alfred Ballard. We treated him just as nice as we knew how to treat him and also offered money to help with his child who was in the hospital."

The defendant made the following statement: "I'm not guilty of any crime for what I done. It was justifiable. I left home to go down to this trailer to call my wife at the hospital to see how my baby was getting along. Mr. Ballard's wife come to the next trailer where I was calling from and asked me to come over and have a drink with them. I told her I did not want a drink but she kept on insinuating [insisting] that I go over and take a drink, so when I got through talking over the phone, I just said, 'Well, I'll go over and drink with them.' I went over and I set on the settee by this Ballard fellow. His wife handed me a glass of something she called champagne. I don't know what it was. It was liquor. They were all dancing and she tried to pull me up to get me to dance with her and I would not dance with her. I told her I couldn't dance and didn't want to dance. She kept on. Ballard's wife and his sister got to arguing. I guess it was on account of her trying to get me to dance with her. I wouldn't dance and then Ballard and his wife got to arguing and he made a pass at me and I got out of the trailer. I left that place in a hurry. I went home and was getting ready to go to bed. He came up in my back yard and called me and told me: "God damn it to come out there." I went out there. I went out there with my shot gun. When I got out there, he was in the edge of my back yard. He had this knife, this same butcher knife. He had it drawn back and said he was going to cut my Goddamn head off. I told him not to do it and he was coming on. I asked him to stop and he wouldn't stop, and I shot him. I went on down the road and didn't see nobody. I was going to my brother's house to take the gun over there to him, and it came to pieces

when I shot him so I throwed it on this building. I came on to this cafe and I went in there to take a drink. I didn't know this girl, and me and her got to talking and I asked her what time it was. She told me. I said it couldn't be that late. She said, 'It is.' I started out of the cafe and I did not tell her that I wanted her to make a testimony that I had shot a man. I went on to my other brother's house and got him to come back down there with me. I was coming down there to give up. When we got down there, the law was there. They jerked me out of the car and all of you know that this city law will beat you up. That is why I did not tell them I did it. I saw that city law. They took me on down there but I did not see this man Ballard. They say I did, but I didn't. I didn't know the man was dead. I knew I shot him. They took me to jail, but I would have told Andrew, but all the time that they were trying to get me to tell, the city law was there. You know their reputation. They will beat you up. They swore that they would beat me up. The next morning I told Andrew. When he wanted me to go with him to get the gun, Tom was there and I told him I would not go. I would not go as long as Tom Bragg was there. This fellow had a reputation of being bad and cutting people up and I was scared of him. That is one reason I shot him."

Buddy Brady, a witness for the defense, testified that he was in the vicinity on the night of the shooting, heard the gun fire, and saw the principals involved; that he heard the deceased call the defendant. On cross-examination he testified as to being in the vicinity to buy some liquor; that the deceased came from beyond a culvert and starting kicking him; that he had never seen the deceased before; that the deceased asked him if he could run, and the witness ran; that two men came up and told him to get in the car (the defendant was in the car) and told him that they would carry him home as soon as they got the defendant home; that he got in the car and went back to the trailer.

Mrs. Mattie Wood testified that she lived near the trailers and heard part of the discussion on the night of the shooting; that she heard a shot but that she could not locate the principals involved.

Sheriff Andrew Hill, upon being called to the witness stand, testified that when they arrested the defendant he said: "Well, Andrew, I shot him but you will never find the gun."

In regard to the contention that this record does not comply with the rules regarding proper briefing of evidence, it is our opinion that it is sufficiently briefed so that we decline to dismiss it under the provisions of Code § 70-305.

The court did not err in denying the motion for new trial.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*